This cause was argued last term; and at this term the following opinions were delivered:—
Kirkpatrick, C. J.
After stating the case; I think the deposition of Ally the indorser of the note, is inadmissible: — So far as it goes to show that the indorsement to Rosevelt was founded upon a usurious contract, he seems to me to be doubly interested. The man who gives a usurious note, is not a witness to prove the usury, until the note is discharged; apd so of an assignment, or other instrument of security. If the indorsement is void for usury, this note, which is not impeached thereby, belongs to Ally, the witness. He swears the note back into his own hands.
As to that part of the deposition which goes to avoid the note itself, it has frequently been adjudged by the ablest judges that ever sat in Westminster Hall, that the indorser cannot be admitted as a witness to this fact. They have adjudged it to be contrary to public policy; and I think it might be added, that it is contrary also to common honesty.
Pennington, J.
The important question in this cause is, whether or not Enos Ally is an admissible witness, to proye the facts of which he was interrogated, and hath answered? The first objection to his admissibility, is that of interest. He passed the noté to Rosevelt; and to a certain extent is answerable to him for it, and is entitled to the remainder pf the money if Rosevelt’s account against him does not swallow it up. He passed the note away when nothing was due on it, and is therefore answerable to Gardner for this act of bad faith. If the note is recovered, it *581 will rentier liim liable to Gardner to the extent of it. If it is not [*] recovered, it will leave him liable to Rosevelt for about one half of it; and also leave him subject to other demands which Rosevelt has against him. It has become a rule of evidence, that where the interest is equal, the witness must be examined; nor have courts been very exact in balancing the interest. It is impossible for the Court to say, with any certainty, on which side the weight of interest lies. I cannot say it lies in favor of the defendant; for this reason, I think that the objection on this head is not well founded. As to the question of usury, I lay it out of the case. But there is another ground of objection to Ally’s testimony, which is supposed to involve in it a question of great public importance. Ally’s name is on the paper as an indorser. The Court of King’s bench, in the case of Walton v. Shelley, 1 Term Rep. 296, adjudged in the year 1786, assumed as a principle of law, that no party who has signed an instrument of writing, or deed, shall ever be permitted to give testimony to invalidate it. The rule was unquestionably too broadly laid down in this case; for witnesses of deeds and wills, have invariably been permitted to tell all the truth respecting the execution of them, either for or against their validity. Three years after this decision, in the case of Bent v. Baker, 3 Term Rep. 36, Butter J. says, that this rule must be confined to negociable paper. In a still later case, Jordaine v. Lashbrooke, adjudged in 1798, 7 Term Rep. 601, the case of Walton v. Shelley, was expressly over-ruled in the Court of King’s Bench; in which case it was decided, that an indorser of a bill of exchange, was a legal witness to prove that the bill was void in its creation; and this, I apprehend, is the settled law of that court at this day. In the meanwhile, the case of Walton v, Shelley, ran the rounds in the courts of the American States; in many of which, it has been recognized and approved of; no doubt from the deservedly great fame of Lord Mansfield, with whom the rule originated. We have no [*] evidence however of this rule having been adopted in this State. The Court is therefore, not bound by any authority, to follow it. It must stand on its own intrinsic merit. It is said to be founded on public policy, and admitted to narrow the rules of evidence. The civil law maxim, that no one shall be heard to allege his own turpitude, is brought in aid of the reasons of public policy, in support of this rule. Whatever may be the extent of this maxim in its own native code, in outlaw it is not applicable to witnesses, which every day’s experience evinces, as well in the trial of civil as in criminal cases. With us, it is solely as I apprehend, applicable to *582 parties. A plaintiff shall not be allowed to alllege, as the ground of his action, his own unlawful and fraudulent acts, nor shall a defendant be permitted to set up by way of defence, his own corrupt or unlawful transactions; and although a witness shall not be compelled to disclose his own corrupt and disgraceful acts, yet he will be permitted to do it, if relevant to the issue, the objection going only to his credit. This brings the case back to the reasons of public policy, which are both ways on the subject. Every reasonable stability ought to be given to negociable paper; yet truth ought not to be concealed. I have taken this view of the subject, to show that the rule adopted in Walton v. Shelley, does not stand on so high a ground as some have imagined; arid that it is yet a subject of legal consideration, and by no means settled law. It appears to me, however, that this cause may be decided, as in equity and justice it ought to be, without disturbing the rule in Walton v. Shelley. For the rule however, I look to the case adjudged, and not to the dicta of the judges. The question decided in that case was, that an indorser of a note should not be called to prove that the note, which he himself had indorsed, and thereby given it a credit, was founded on a usurious consideration, and therefore void from the beginning; that he should not, after giving credit to the note by his signature, whereby [*] it had got into the hands of an innocent purchaser without notice, be permitted to destroy the instrument by disclosing a secret malady, wholly unknown to the purchaser at the time of the indorsement. This is the spirit of the rule adopted; it is to preserve innocent bona Jide holders of negociable paper, against the frauds of corrupt indorsers; to prevent corrupt ¡combinations to deceive fair holders of mercantile instruments. Then let me ask what is the present case? Ally, the indorse!*, is called, not to prove any latent defect in the note; not that the instrument was originally void; not that it contained a secret disease that would destroy it in whosoever hands it came; but that at the time of the indorsement, the defendant had an equitable set-off against it; and that the plaintiff, the indorsee, was informed at thé time of the indorsement, of the fact, and took the note subject to this equity. The rule in Walton v. Shelley, was intended as a shield to protect the innocent; but it is now attempted tobe converted°ínto a weapon of injustice. In the case of Baker v. Arnold, 1 N. Y. Term Rep. 258, the indorser of a note was held a good witness to prove that .the note was indorsed when over due; although the evident tendency of testimony was to let in evidence of the want of consideration, thereby to destroy the note in toto; and this was held as not im *583 pugning the rule in Walton v. Shelley. In that case, Kent, J. is to be understood as saying that the witness was rejected in Walton v. Shelley; and the New-York cases decided in conformity thereto, on the ground that the testimony went directly to destroy the paper. But ho says, that in that case, the object of the party might be merely to let in proof of payment to the original payee, which is precisely the case under consideration; and both Kent and lladcliffe, justices, in that case, strongly intimated an opinion, that there is danger in carrying the practice adopted in Walton v. Shelley, beyond the reason of the rule. Parsons C. J. in 3 Mass. [*] Rep. 31, gives a like reasonable limitation to the rule. 1 would not, however, be understood as approving the case' of Walton v. Shelley, as 1 very much doubt its correctness; but as that case has so many respectable advocates, I have endeavored to leave it undisturbed in giving my reasons foF the judgment which I think the court ought to render. Th(s affirmation of Ally being received, we must take what he affirmed to be true, as the credit due to Ally cannot be a subject for the consideration of the Court. Ally testifies that there was nothing due on the note when it was indorsed to the plaintiff; and that the plaintiff was so informed at the time. I am, therefore, of opinion, that the defendant ought to have judgment.
I take no notice of the testimony of Ally, as it respects the usury; as, in my apprehension, it is not necessary; for if he is a good witness to other facts, and those facts sufficient to destroy the action of the plaintiff', .1 can see no reason why he may not be examined on those facts, to the proof of which, he is a competent witness, and rejected as to those to which he is not. 1 however give no opinion as to the admissibility of Ally’s testimony, on the ground of usury.
Roselle, J.
I am clearly in favor of the last opinion delivered. I can perceive no reason why Ally’s testimony should not he received; and that is conclusive against the plaintiff'. Judgment for defendant.(a)

 S P. 6 Halst. 99, 5 Ib. 297.